IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DERRICK MACK,                          :
                                       :
            Plaintiff,                 :          CIVIL NO. 4:CV-08-1096
                                       :
      v.                               :          Hon. John E. Jones III
                                       :
SUPERINTENDENT                         :
MICHAEL KLOPOTOSKI, *et al.*,          :
                                       :
            Defendants.                :

## MEMORANDUM

September 21, 2010

## THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

Plaintiff Derrick Mack, an inmate confined at the State Correctional Institution at Dallas ("SCI Dallas") in Dallas, Pennsylvania, initiated the above civil rights action *pro se* by filing a Complaint under the provisions of 42 U.S.C. § 1983.  Presently before the Court is a Motion for Summary Judgment filed on behalf of Defendants. (Doc. 28.)  For the reasons set forth herein, the Motion will be granted.

In his Complaint, filed on June 9, 2008, Mack names the following Defendants who, at the time of the events that form the basis for his Complaint, were employed in the following positions at SCI Dallas: Michael Klopotoski, Superintendent; Norman Demming, Corrections Classification Program Manager; Martin Walsh, School

Principal; Patricia Haradem, Chief Librarian; and Thomas Rovinski, Activities Director. (Doc. 4, Complaint, at 3.) Mack alleges that Defendants were deliberately indifferent to the dangerous condition of the basketball courts at SCI Dallas and that, as a result of the dangerous condition, during an organized basketball game, he fell and sustained a serious injury that required surgery. Mack also alleges that he was subject to "official retaliation"; that, as a result of the inadequate library at SCI Dallas, he was denied access to the courts, resulting in his loss of an appeal; and that, in violation of the First Amendment, a legal book mailed to him by his sister was intercepted and confiscated without any valid justification. Mack also alleges that Defendant Klopotoski's denial of his appeals from the grievances regarding these issues deprived him of his constitutional rights and extended his pain and suffering. (*Id.* at 3 ¶ 2.) Mack's allegations in support of each of his claims are as follows:

**Deliberate Indifference Claim**

Mack states that, in Grievance Number 211273, filed on December 11, 2007, he presented the following issue:

Mack had been complaining about the danger of hurting himself while playing organized sports at SCI Dallas due to the damaged basketball court. (*Id.* at 3 ¶ 7; *Id.* at 16, Copy of Grievance No. 211273.) He had filed a Request to Staff Member Form

with Defendant Rovinski asking when he would put in a work order to fix the "unlevel spots" on the basketball court because people were getting hurt. (*Id.* at 3 ¶ 7; *Id.* at 16; *Id.* at 14, Copy of 6/25/07 Request to Staff Member.) Rovinski responded that "Work orders have been entered for months. Reported on Fire & Safety weekly." (*Id.* at 3 ¶ 7; *Id.* at 16; *Id.* at 14.) Mack also alleges that, during an organized game at SCI Dallas, he was seriously injured on the broken court and suffered severe physical injuries, including a knee injury which required emergency medical care and surgery. (*Id.* at 3 ¶ 7; *Id.* at 16.)

Mack recounts that Defendant Demming responded to his grievance by stating that repairs could not be made in the cold weather, and that they would do their best to repair the courts in warm weather. (*Id.* at 7 ¶ 26.) He claims that this response is evidence that staff was fully aware of the dangerous area, yet failed to do anything, and even opened the courts for use by SCI Dallas inmates a month later. (*Id.*) Mack alleges that the failure by SCI Dallas staff to act by fixing the problem or preventing inmates from using the basketball courts, which resulted in his "permanent" injury, constitutes deliberate indifference. (*Id.* at 5 ¶ 14.)

**Retaliation Claim**

Mack next avers that, in Grievance Number 211037, filed in December 2007[1], he presented the following issue:

Mack claimed that he was suffering from "official retaliation" for exercising his constitutional rights. (*Id.* at 4 ¶ 8; *Id.* at 15, Copy of Grievance No. 211037.) Mack does not explain in the grievance how the alleged failure of SCI Dallas staff to maintain an adequate library constitutes "official retaliation." (*See* Doc. 4 at 15.) However, in his Complaint, Mack claims that he satisfies the essential elements to sustain a retaliation claim in the Third Circuit for the following reasons:

> (1) The retaliation was constitutionally protected as outlined above; (2) I suffered an 'adverse action' when my appeal was denied and I needed surgery, due to the Defendants' actions and inactions; (3) There is a causal connection between the first two elements when I presented the Defendants with my complaints, and desire to exercise my U.S. Constitutional rights, and their retaliation was a substantial or motivating factor in the adverse actions (and inactions) taken against me; (4) The Defendants would 'not' have taken the same adverse actions (or inactions) in the absence of my Grievances.

(Doc. 4 at 6 ¶ 23.)

---

[1]As a result of poor copy quality, the day in December is not discernible on the copy of Grievance Number 211037 attached to Mack's Complaint.

**Access to the Courts Claim**

In Grievance Number 211037, Mack also presented the following issue:

Mack explained that, although he is incarcerated in Pennsylvania, he was convicted in New Jersey, and that the SCI Dallas law library was inadequate in that it is understaffed, it does not have New Jersey court rules, the printer attached to the only computer with Encyclopedia Encarta software is broken, and the copier is broken. (*Id.* at 4 ¶ 8; *Id.* at 15, Copy of Grievance No. 211037.) As relief, Mack requested that the SCI Dallas law library be updated. (*Id.* at 15.)

In his Complaint, Mack elaborates on his claim regarding the inadequate law library at SCI Dallas by alleging that, contrary to Defendant Walsh's response to his grievance that the computer with Encarta software has nothing to do with the law library, and that other hardbound encyclopedias are available in the library for photocopying, the only way that he could obtain New Jersey "'legal' issues" was through Encarta software. (*Id.* at 4 ¶ 12.) As a result, Mack alleges that his right of access to the courts was violated when the printer attached to the only computer with Encarta software was broken. (*Id.*) At a later point in his Complaint, Mack alleges that he lost an appeal as a result of the inadequate library at SCI Dallas. (*Id.* at 6 ¶ 20.)

**Illegal Confiscation Claim**

In Grievance Number 211037, Mack also presented the following issue:

Mack claimed that his sister purchased a copy of the New Jersey Rules of Court for $108.00 and mailed it to him, but that the book was not turned over to him. (*Id.* at 4 ¶ 8; *Id.* at 15.) As relief, he requested reimbursement for the $108.00, as well as an $1,000,000 in compensation. (*Id.* at 15.)

In his Complaint, Mack elaborates on his illegal confiscation claim by alleging that Defendant Haradem failed to follow proper procedure in rejecting the mail from his sister containing the New Jersey Court Rules book in that she did not provide him with notification of the reason for the rejection via a mail rejection slip. (*Id.* at 7 ¶ 27.) Mack alleges that Haradem's failure to provide him with a reason for the confiscation of the book violates the First Amendment requirement that mail rejections or seizures must be "reasonably related to legitimate penological interests." (*Id.* at 4-5 ¶ 13 (citing *Procunier v. Martinez*, 416 U.S. 396 (1974); *Turner v. Safley*, 482 U.S. 85, 89 (1987)).) Mack also alleges that the unlawful seizure of his legal book violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment. (*Id.* at 5 ¶ 16.)

As relief in this action, Mack requests compensatory and punitive damages as

well as an order directing SCI Dallas to fix the problems with their law library and activities equipment and grounds and directing SCI Dallas staff to avoid any form of "official retaliation" against Mack for exercising his constitutional rights. (*Id.* at 9 § V.)

## I. PROCEDURAL BACKGROUND

Service of the Complaint was directed by Order dated June 18, 2008.[2] (Doc. 6.) Although waivers of service were sent by Defendants on June 20, 2008, (Docs. 7, 8), and counsel entered an appearance on Defendants' behalf on August 8, 2008, no response to the Complaint was filed. Therefore, by Order dated February 4, 2009, this Court directed Defendants to respond to Plaintiff's Complaint within fifteen (15) days. (Doc. 9.) Defendants filed an Answer to the Complaint on February 19, 2009. (Doc. 11.)

On March 3, 2009, an Order issued providing that discovery was to be completed within sixty (60) days, discovery-related motions were to be filed within fifteen (15) days from the close of discovery, and dispositive motions were to be filed forty-five (45) days from the close of discovery. (Doc. 12).

Because no dispositive motions were filed by the deadline set in our March 3

---

[2]In our service order, we also struck Plaintiff's request for a specific amount of damages pursuant to Middle District of Pennsylvania Local Rule ("LR") 8.1. (*See* Doc. 6.)

Order, by Order dated October 8, 2009, we granted an additional fifteen (15) days to file dispositive motions before the case was set for trial. (Doc. 17.) On October 13, 2009, Defendants requested an extension of time until November 9, 2009 to file dispositive motions because counsel for Defendants was out of the country on vacation until October 26, 2009. (*See* Doc. 17 ¶ 2.) By Order dated October 14, 2009, Defendants' Motion was granted, and we directed that dispositive motions, together with supporting papers, were to be filed on or before November 9, 2009. (Doc. 18.)

No dispositive motions were filed by the November 9 deadline. On December 4, 2009, Plaintiff filed a Motion for Default Judgment. (Doc. 20.) In a Memorandum and Order dated January 14, 2010, we explained that, because Defendants had filed an Answer to the Complaint, the entry of default pursuant to Fed. R. Civ. P. 55 would be inappropriate. (Doc. 22.) Accordingly, we denied Plaintiff's Motion. (*Id.*) However, in preparation for setting the case for trial, we referred it to Magistrate Judge Martin C. Carlson for a status conference. (*Id.*)

Following the February 3, 2010 conference, Judge Carlson issued a Case Management Order setting forth pre-trial deadlines in this case and providing, *inter alia*, that dispositive motions must be filed by February 17, 2010, and that any

motions filed must be accompanied by a motion seeking leave to file a motion out of time. (*See* Doc. 26.) The Case Management Order also provided that the parties were to notify the Court on or before March 31, 2010 as to whether they would consent to proceed with this case before the Magistrate Judge. (*See* Doc. 26.)

On February 17, 2010, Defendants filed the instant Motion for Summary Judgment (Doc. 28) and their Motion requesting an extension of time to file their summary judgment motion *nunc pro tunc* (Doc. 27).[3] Defendants also filed a supporting brief (Doc. 29); supporting exhibits (Docs. 29-2 through 29-13); and a Statement of Undisputed Facts (Doc. 28-3). On March 10, 2010, Plaintiff filed a document entitled "Plaintiff's Objections to Defendant's [*sic*] Motion for Summary Judgment and Supporting Materials" (Doc. 33). The document was accompanied by exhibits. (Docs. 33-2, 33-3.)

Because the parties had not filed their notices indicating whether they consented to proceed before a Magistrate Judge by the March 31, 2010 deadline, by Order dated April 8, 2010, Judge Carlson prompted the parties to file their notices on or before

---

[3]Although Mack filed a document on February 18, 2010 entitled "Dispositive Motions & Supporting Brief" (Doc. 30), the document was not docketed as a motion. In any event, because it is evident from the record developed from Defendants' Motion for Summary Judgment that Mack failed to exhaust his administrative remedies as to all of the claims in the instant action, and Mack's "dispositive motion" does not demonstrate that he exhausted those remedies, even if his document had been docketed as a cross-motion for summary judgment, his motion would be denied.

April 15, 2010. (Doc. 35.) On April 15, 2010, Defendants filed a Notice indicating that they consented to proceed before the Magistrate Judge. (Doc. 36.) On April 19, 2010, Plaintiff filed a Notice indicating that he did not consent to proceed before the Magistrate Judge. (Doc. 37.) Therefore, by Order dated April 21, 2010, we clarified that this case would proceed before the undersigned. (Doc. 38.) In that Order, we also granted Defendants' Motion requesting leave to file their summary judgment motion *nunc pro tunc*. (*Id.*) In addition, we clarified that we construed "Plaintiff's Objections to Defendant's [*sic*] Motion for Summary Judgment and Supporting Materials" (Docs. 33, 33-2, 33-3) as his brief in opposition to Defendants' Motion and his supporting exhibits. However, because Plaintiff had not filed a statement of material facts responding to Defendants' statement as required by LR 56.1, we directed him to file his statement on or before May 12, 2010. (Doc. 38.) Plaintiff filed his Statement on May 10, 2010.[4] (Doc. 39.) Accordingly, Defendants' Motion for Summary Judgment is fully briefed and ripe for review.

---

[4]On May 14, 2010, Plaintiff filed a Motion Regarding Local Rule 16.3 Conference and Exchange of Proposed Jury Instructions. (Doc. 40.) By Order dated May 17, 2010, we recognized that a conference and exchange of proposed jury instructions had been scheduled to be completed on or before May 17 pursuant to Judge Carlson's Case Management Order; however, in light of the fact that Defendants' Motion for Summary Judgment had not yet become ripe, we suspended all of the case management deadlines and denied Plaintiff's Motion without prejudice to his ability to renew it in the event that new case mangement deadlines are set. (Doc. 41.) We denied Plaintiff's subsequently filed Motion in Limine on the same basis. (Doc. 42.)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial.  *Id.* at 325.  Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).  An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial."

11

*Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non-moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48.

## III. DISCUSSION

### A. Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") requires inmates to present their claims through an administrative grievance process before filing suit in federal court. Specifically, section 1997e(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this

title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted."

This "exhaustion requirement applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

"'[I]t is beyond the power of this court- or any other- to excuse compliance with the

exhaustion requirement, whether on the ground of futility, inadequacy or any other

basis.'" *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir. 2000) (quoting *Beeson v. Fishkill*

*Corr. Facility,* 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998) (citing *Weinberger v. Salfi,*

422 U.S. 749, 766 (1975)). The PLRA "completely precludes a futility exception to its

mandatory exhaustion requirement." *Nyhuis,* 204 F.3d at 71. The PLRA also

mandates that inmates "properly" exhaust administrative remedies before filing suit in

federal court.[5] *Woodford v. Ngo,* 548 U.S. 81, 92 (2006).

"Proper exhaustion demands compliance with an agency's deadlines and other

critical procedural rules because no adjudicative system can function effectively

_____

[5]Because a plaintiff's failure to exhaust is an affirmative defense, a plaintiff is not required to allege in his complaint that he has exhausted administrative remedies. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). Rather, failure to exhaust must be pleaded and proven by the Defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93 (quoting *Porter,* 534 U.S. at 525)). Failure to comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis,* 372 F.3d 218, 227-32 (3d Cir. 2004) ("[P]rison grievance procedures supply the yardstick for measuring procedural default.") A procedural default, "either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." *Gallego v. United States,* Civil No. 1:02-CV-1157, 2005 WL 1653166, at *2 (M.D. Pa. July 8, 2005).

### B.     Statement of Facts Regarding Exhaustion

Defendants properly have raised the matter of exhaustion of administrative remedies made available to inmates confined in DOC custody. *See* DC-ADM 804, "Inmate Grievances". (Doc. 29-3, Copy of DC-ADM 804[6].) The factual record

---

[6]Defendants have submitted the January 3, 2005 version of DC-ADM 804. (Doc. 29-3.) It is undisputed that this version was in place the entire year of 2007, which was the time period during which the events that form the basis of the instant Complaint took place. (*See* Doc. 28-3, Dfts.

(continued...)

14

establishes as follows with respect to the requirements for exhaustion applicable to Pennsylvania DOC inmates, including Plaintiff:

The Pennsylvania DOC offers a three-phase review procedure that is set forth in DC-ADM 804. (Doc. 29-3, DC-ADM 804, at 4-12.) Before utilizing the formal grievance procedure, an inmate is encouraged to attempt informal resolution of a concern either through submission of an Inmate Request to Staff Form, or through direct conversation with the Unit Manager or Officer-In-Charge. (*Id.* at 4, § VI. A. 4; Doc. 39, Pltf. SMF, ¶ 43.)

An inmate who has a concern that he is unable to resolve may proceed to the first official step of the required grievance procedure by submitting a grievance to the grievance coordinator within fifteen (15) working days of the date of the events giving rise to the grievance. (*Id.* at 5 § VI. A. 8.) The grievance must be in writing to the Facility Grievance Coordinator using the grievance form, which is available on all housing units or blocks. (*Id.* at 4, § VI. A. 6.) Within ten (10) working days, the grievance coordinator transmits a decision to the inmate. (*Id.* at 6 § VI. B. 7.)

If the inmate is dissatisfied with the disposition of the grievance, he may, within ten (10) days of the grievance coordinator's decision, appeal to the Facility

---

[6](...continued)
Statement of Material Facts ("SMF"), ¶ 41; Doc. 39, Pltf. SMF, ¶ 41.)

Manager/Superintendent raising only those issues that were a part of the original grievance and any determinations of frivolousness. (*Id.* at 7, § VI. C. 1.) Within ten (10) working days, the Facility Manager must provide a written decision and statement of reasons to the inmate. (*Id.* at 8, § VI. C. 2.)

Finally, an inmate who is dissatisfied with the disposition of an appeal from a Facility Manager may submit an appeal to the Secretary's Office of Inmate Grievances and Appeals within fifteen (15) working days of the decision of the Facility Manager. (*Id.* at 9 § V1. D. 1.) Only issues appealed to the Facility Manager may be raised at this level.[7] (*Id.*) Along with the appeal, the inmate must include photocopies of the original grievance, the Initial Review Response, the Appeal to the Facility Manager, and the Facility Manager's response.[8] (*Id.* at 10 § V1. D. 1(g).) DC-ADM specifies

---

[7]Plaintiff disputes that only issues appealed to the Facility Manager may be appealed to the final level of review. (Doc. 39 ¶ 51.) He contends that "[t]here are circumstances and issues that may have taken place 'after' the grievance was already filed, where the inmate will be permitted to present new facts, or new evidence." (*Id.*) However, Plaintiff fails to point to a place in the record supporting this contention, and therefore, he has not successfully demonstrated that there is a genuine issue of material fact as to this requirement set forth in DC-ADM 801.

[8]Mack disputes that photocopies ***must*** be included based on his claim that, in some situations, the requirement will be "waived" such as when an inmate was seriously injured and in a coma for two (2) years, or if staff intentionally or unintentionally destroyed copies. (Doc. 39 ¶ 52.) However, he neither cites to the official policy establishing these exceptions to the requirement that inmates submit all required documentation, nor states that he was in a two-year coma or that staff destroyed his copies such that these alleged exceptions were applicable in his case. (*See id.*) Further, if he believes that the requirement to provide photocopies should have been waived in his case, he fails to explain why he did not submit a request for waiver to the Secretary's Office at the

(continued...)

that failure to provide the aforementioned proper documentation may result in the appeal being dismissed.[9]  (*Id.*)  The Secretary's Office has thirty (30) days from the receipt of an appeal to issue a decision.  (*Id.* at 11 § V1. D. 2. A. (1).)

It is undisputed that, at each step in the grievance process, the status of the grievance is recorded in the Automated Inmate Grievance Tracking System.  (Doc. 28-3 ¶ 54; Doc. 39 ¶ 54.)  In the instant case, the Tracking System shows that, on February 14, 2008, Chief Grievance Officer Cindy Watson of the Secretary's Office of Inmate Grievances and Appeals issued notices to Mack that his appeals to that Office from Grievances Numbers 211037 and 211273 were incomplete.  (Doc. 29-4, Copy of Notice as to Grievance No. 211037; Doc. 29-5, Copy of Notice as to Grievance No. 211273.)  Mack specifically was advised that copies of his appeals to the Facility Manager from the denial of both of those grievances, as well as the responses to those

---

[8](...continued)
time that they prompted him to file the required documentation.

[9]Plaintiff correctly points out that the use of the word "may" in DC-ADM 804 § V1. D. 1(g) signals that the dismissal of an inmate's appeal for failure to file the required documentation is not mandatory.  (Doc. 39 ¶ 53.)  However, his observation fails to contravert the fact that the policy puts inmates on notice that their appeals may be dismissed as a result of their failure to file required documentation, as well as the fact that he specifically was warned in the February 14, 2008 Notices he received from the Office of Inmate Grievances and Appeals that, "A failure to provide the missing information (identified below) within this time period will result in a dismissal of your appeal."  (*See* Docs. 29-4, 29-5.)

appeals, were missing.  (*See* Docs. 29-4, 29-5.)  He was notified that he was not permitted to appeal unless he complied with the procedures set forth in DC-ADM 804 by submitting the missing copies within ten (10) working days and that his failure to do so would result in the dismissal of his appeals.  (*Id.*)

The record also reflects that Mack subsequently submitted handwritten original documents prepared on an Inmate Request to Staff Member Form purporting to be his appeals from each of the grievances to the Superintendent.  (Docs. 29-6, 29-7.)  The record does not show that Mack provided photocopies of the Superintendent's responses to those appeals.  On February 28, 2008, Ms. Watson of the Office of Inmate Grievances and Appeals issued a notice to Mack that his appeals from both grievances had been dismissed at the final level for failure to provide the documentation he had been directed to provide in the February 14, 2008 Notices.  (Doc. 29-8, Copy of 2/28/08 Notice.)  Watson offered the following explanation of the dismissal:

> This office requested that you provide us with a copy of your appeal to the Superintendent for the above stated grievances.  Although you provided your appeal[s] to the Superintendent, they are handwritten and are not photocopies as required by DC ADM 804.  Therefore, your appeals to final review are dismissed.

(*Id.*)

**C. Analysis**

18

Defendants have demonstrated that Plaintiff failed to exhaust his administrative remedies as to Grievances Number 211037 in which he raised the issues that form the basis for his retaliation claim, access to the courts claim, and First Amendment claim stemming from the allegedly illegal confiscation of his legal book.  Defendants also have demonstrated that Plaintiff failed to exhaust his administrative remedies as to Grievance Number 211273 in which he raised the issues that form the basis for his deliberate indifference claim regarding the dangerous condition of the SCI Dallas basketball courts.  Specifically, Defendants have shown that these grievances were dismissed on procedural grounds at the final stage of review, and therefore, the issues never were considered on the merits by the Office of Inmate Grievances and Appeals.

In attempting to dispute the record of his grievances showing that he failed to submit the proper documentation to the Office of Inmate Grievances and Appeals, Mack first contends that, after he received the Office's February 14, 2008 Notice stating that copies of his appeal to the Facility Manager and the response thereto were missing, he filed a timely response explaining that he **had** included those copies with his appeal.  (Doc. 39 ¶ 56.)  He claims that he also provided his "original handwritten copies which presented the exact same issues raised on appeal."  (*Id.* ¶ 57.)  He also suggests that Defendants already had the photocopies, and therefore, it was not

necessary for him to provide them.  (*Id.* ¶ 58.)

In considering this line of argument, we first observe that, even if Mack included the photocopies with his appeal, the fact is that he was informed that they were missing at the time the Office had his appeal was before the Office of Inmate Grievances and Appeals for consideration.  He does not explain why he provided handwritten original copies rather than photocopies as he had been directed.  In addition, even if the relevant photocopies were obtainable by the Office in some way other than through Mack, he still fails to dispute that, pursuant to DC-ADM 804, he was required to provide those photocopies with his appeal and that he was warned that his failure to do so would result in the dismissal of his appeal.

Mack also claims that his grievances were dismissed because of "official retaliation."  (Doc. 39 ¶ 59 a.)  However, this blanket assertion without any supporting evidence fails to contradict the record of Mack's grievances showing that they were dismissed solely as a result of his failure to provide the required documentation.

Finally, Mack claims that the dismissal of his appeal to final review constitutes a denial on the merits, and therefore, he exhausted his administrative remedies, and Defendants' argument that he failed to exhaust is "moot."  (Doc. 39 ¶ 59 g.)  Mack's attempt to turn a dismissal into a denial to suit his purposes fails to contradict the copy

of the February 28, 2008 dismissal itself, which clearly states that his appeal was dismissed because he failed to provide the documentation for proper review.  (*See* Docs. 29-4, 29-5, 29-8.)

For the foregoing reasons, Mack fails to show that there is any genuine issue of material fact as to his failure to exhaust his administrative remedies with respect to the claims that form the basis for the Complaint in this action.  Therefore, Defendants are entitled to judgment as a matter of law.  An appropriate Order will enter.